UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

ROXANA DE LA CARIDAD
CHACON MEDINA,

      Petitioner,

v.                                                                         No. 1:26-CV-114-H

MARKWAYNE MULLIN, et al.,[1]

      Respondents.

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Roxana de la Caridad Chacon Medina, a native and citizen of Cuba, is one such alien, having illegally entered the United States over two years ago. Her habeas petition, filed after the Fifth Circuit's decision in *Buenrostro-Mendez*, demands her immediate release based on the text of the INA, its implementing regulations, the Fifth Amendment, the APA, the Suspension Clause, and the *Accardi* doctrine. Dkt. No. 1.

In light of *Buenrostro-Mendez*, Chacon Medina's claims based on the INA and its implementing regulations are foreclosed. Her remaining claims fail on the merits. Procedural due process does not require her release. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Chacon Medina are not entitled to bond, but they are permitted to remain in U.S. custody

---

[1] Markwayne Mullin replaced Kristi Noem as Secretary of Homeland Security on March 26, 2026. Thus, he is automatically substituted as a party to this action. *See* Fed. R. Civ. P. 25(d).

and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Chacon Medina's frivolous equal-protection, Suspension Clause, and APA claims fail, too. And her *Accardi* claim is not cognizable in habeas. The petition (Dkt. No. 1) is denied.

## 1.    Background

In September 2023, Chacon Medina entered the United States at or near Calexico, California. Dkt. No. 1 ¶ 22. After entering, she was processed under a CBP One Application and placed into removal proceedings with a Notice to Appear. *Id.* ¶ 25. The NTA charged her with removability as an alien without valid entry documents. *Id.* ¶ 26; *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I). On February 11, 2025, she was taken into custody after ICE arrived at her place of employment. Dkt. No. 1 ¶ 23.

Chacon Medina is held without bond and neither requested nor received a bond hearing. *See id.* ¶ 52. That is because the Board of Immigration Appeals' opinion in *Matter of Yajure Hurtado* holds that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).[2]

Chacon Medina filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states six claims for relief. Her first claim—ostensibly presented to preserve the argument

---

[2] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. 813 F. Supp. 3d 692 (N.D. Tex. 2025). Moreover, in a March 6 order, the Ninth Circuit stayed the Central District's vacatur pending a ruling on the government's emergency motion for a stay pending appeal. *Maldonado Bautista v. DHS*, No. 26-1044, Dkt. No. 5 at 2 (9th Cir. March 6, 2026). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Chacon Medina's petition does not present an exhaustion problem. *Id.*

for appeal—argues that her detention is unlawful under the INA and its implementing regulations. *Id.* ¶¶ 75–88. Her second claim contends that her detention violates her rights under the Fifth Amendment's Due Process Clause. *Id.* ¶¶ 89–101. She asserts in her third claim that her continued detention without a bond hearing constitutes arbitrary and capricious agency action under the APA. *Id.* ¶¶ 102–13. Fourth, she claims that she is detained pursuant to a discriminatory classification in violation of the Fifth Amendment's equal-protection guarantee. *Id.* ¶¶ 114–25. In her fifth claim, she argues that the lack of individualized review for her claims violates the Constitution's Suspension Clause. *Id.* ¶¶ 126–36. Finally, she raises an *Accardi* claim, arguing that the respondents failed to follow their own regulations in arresting and processing her. *Id.* ¶¶ 137–47.[3]

As mentioned above, the petition preserves for appeal a statutory claim foreclosed by the Fifth Circuit's decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. There, the Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all

---

[3] In her reply brief, Chacon Medina raises a Fourth Amendment claim for the first time. Dkt. No. 9. Counsel is reminded that "arguments cannot be raised for the first time in a reply brief." *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008). Moreover, "unlike in cases involving *pro se* litigants, courts are not compelled to liberally construe the pleadings of parties represented by counsel." *Barron v. United States*, 111 F.4th 667, 679 n.1 (5th Cir. 2024) (Ramirez, J., concurring). The Court will not address these untimely arguments here.

applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747 (N.D. Tex. 2026)).

Currently, Chacon Medina is detained at the Bluebonnet Detention Center. Dkt. No. 1 ¶ 1.

## 2.    Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the Chacon Medina must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## 3.    Analysis

As noted above, Chacon Medina raises six claims in her habeas petition. Dkt. No. 1 ¶¶ 75–147. The claims run the gamut; they include a statutory claim under the INA, two different claims based on the Fifth Amendment, an APA claim, a claim alleging a violation of the Supsension Clause, and an *Accardi* claim. *Id.* As explained below, *Buenrostro-Mendez* forecloses Chacon Medina's first claim. Thus, the Court turns to her remaining claims. The

Court has considered whether the Due Process Clause[4] and the APA[5] entitle illegal aliens to individualized bond hearings in numerous prior cases. Even so, the Court considers the arguments raised in Chacon Medina's petition to address whether she is entitled to release on any of her five remaining claims. The answer is no.

> ### A. Because the Court assumes jurisdiction over Chacon Medina's petition, the Suspension Clause is not implicated.

As a preliminary matter, the Court exercises its statutory jurisdiction under 28 U.S.C. § 2241 to address the merits of Chacon Medina's petition. Chacon Medina's assertion that she is "categorically ineligible" for custody review is therefore puzzling. Dkt. No. 1 ¶ 4. She does not explain, for example, which jurisdiction-stripping provision of the INA might be implicated by her claims, such that review would be unavailable. Section 1252(g) "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal orders." *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (internal quotation marks omitted). And the Supreme Court in *Jennings v. Rodriguez* rejected the respondents' proposed reading of the INA's jurisdiction-stripping provisions because it would "make claims of prolonged detention effectively unreviewable." 583 U.S. 281, 293 (2018). Seeing no merit to Chacon Medina's Suspension Clause claim, the Court turns to the four remaining claims. *See also Livas v. Myers*, 455 F. Supp. 3d 272, 278 n.9 (W.D. La. 2020) (noting that "no cause of action arises under the Suspension Clause itself").

---

[4] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 814 F. Supp. 3d 747; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, 814 F. Supp. 3d 685 (N.D. Tex. 2025).

[5] *See, e.g.*, *Garibay-Robledo*, 814 F. Supp. 3d 747.

B.      *Buenrostro-Mendez* forecloses Chacon Medina's INA claim.

Chacon Medina challenges her detention as unlawful under the INA and its implementing regulations. *Id.* ¶¶ 75–88. But she is an "applicant for admission" within the meaning of Section 1225(a)(1). Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Chacon Medina is an "alien." She is "present in the United States." And she "has not been admitted" because she did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted"). As an applicant for admission, binding Fifth Circuit precedent requires that she be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498.

As for the INA's implementing regulations, even if Chacon Medina's reading of the relevant regulations were correct, she is not entitled to relief. Insofar as such regulations "contradict the plain text of [Section] 1225(b)(2)(A), the statute governs because 'a valid statute always prevails over a conflicting regulation.'" *Benitez v. Bradford*, No. 4:25-CV-6178, 2026 WL 82235, at *1 (S.D. Tex. Jan. 8, 2026) (Eskridge, J.) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022)).[6] Thus, Chacon Medina's INA claim fails.[7]

---

[6] The Fifth Circuit, for its part, held that "the government's past practice" of treating unadmitted aliens as subject to Section 1226(a) pursuant to those regulations "has little to do with the statute's text." *Buenrostro-Mendez*, 166 F.4th at 506.

[7] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.4.

C.    **The Fifth Amendment does not require the government to give Chacon Medina a bond hearing.**

i.    **Procedural Due Process**

Next is Chacon Medina's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 89–101. She claims that the respondents' actions "offend[] the core protections of the Due Process Clause." *Id.* ¶ 100. But she is not entitled to relief.

As an "applicant for admission," Chacon Medina has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Chacon Medina is not entitled to release as a matter of procedural due process.

ii.    **Equal Protection**

Chacon Medina also argues that her detention violates her right to equal protection under the Fifth Amendment. Dkt. No. 1 ¶¶ 114–25. She claims that the government's treatment of her creates an unjustifiable disparity between her and similarly situated detainees who receive individualized bond hearings. *See id.* It is a peculiar claim, considering that the primary objection to the respondents' detention policy is its over-

inclusivity. *See Buenrostro-Mendez*, 166 F.4th at 508 (Douglas, J., dissenting) ("[T]he government today asserts the authority and mandate to detain millions of noncitizens in the interior . . . on the same terms as if they were apprehended at the border.").

The Supreme Court has interpreted the Fifth Amendment to "contain[] an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). "Fifth Amendment equal protection claims against federal actors are analyzed under the same standards as Fourteenth Amendment equal protection claims against state actors." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)). And "[t]o establish an Equal Protection Clause violation," Chacon Medina "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Id.* (internal quotation marks omitted).

Chacon Medina's argument fails many times over. She briefly notes that she "is a citizen and national of Cuba" who has "no criminal record." *Id.* ¶¶ 22, 25. Because other similarly situated detainees have received bond hearings, she argues, the respondents' failure to give her a bond hearing is "fails rational-basis review." *Id.* ¶ 120. She does not mention the alleged basis for the government's purported discrimination, nor does she "identify any other individuals or groups that [s]he claims were similarly situated but received superior treatment." *Butts*, 877 F.3d at 590.

Nor could she. To start, her argument is unclear as to which classes of aliens are relevantly similar. The Court perceives two potential interpretations of Chacon Medina's argument. Both are frivolous.

First, by "similarly situated," Chacon Medina may mean factual similarity: aliens who have "no criminal record" or otherwise might merit release on bond, were they subject to discretionary detention. *Id.* ¶ 25; *see id.* ¶ 121. But this argument merely rehashes the merits of *Yajure Hurtado* and *Buenrostro-Mendez*. Those decisions held that such factual similarities are irrelevant for mandatory detention under the INA. Rather, what matters is whether (1) an alien is "an applicant for admission" and (2) "the examining immigration officer determines" that the alien "is not clearly and beyond a doubt entitled to be admitted." *Buenrostro-Mendez*, 166 F.4th at 499 (quoting 8 U.S.C. § 1225(b)(2)(A)). Far from arbitrary or discriminatory treatment, this classification "put aliens seeking admission lawfully on equal footing with those who entered without inspection." *Id.* at 508. To the contrary, it would appear arbitrary and "strange to suggest that Congress . . . preserved bond hearings exclusively for unlawful entrants." *Id.*

Second, Chacon Medina might be arguing that there are "similarly situated" aliens in a legal sense: those who have been detained pursuant to Section 1225(b)(2)(A), prevailed in habeas, and were granted release on bond. But *Yajure Hurtado* and *Buenrostro-Mendez* require the respondents' categorical application of Section 1225(b)(2)(A) to all applicants for admission. Chacon Medina does not demonstrate how this creates impermissibly arbitrary or discriminatory treatment, nor does she argue that this statutory construction is a pretext for such treatment. Insofar as Chacon Medina asserts an equal protection violation because aliens outside of the Fifth Circuit or the Northern District of Texas are treated differently from aliens in other circuits or districts, "such a claim is without merit." *Serrano v. Berkebile*, No. 3:08-CV-1587, 2009 WL 81017, at *3 n.2 (N.D. Tex. Jan. 9, 2009) (noting that jurisdictional differences like a circuit split do not create equal-protection violations).

Indeed, Congress passed the IIRIRA amendments precisely to end the differential treatment of similarly-situated aliens by eliminating the so-called "entry doctrine." *Garibay-Robledo*, 814 F. Supp. 3d at 755. The entry doctrine allowed "aliens who snuck into the United States without inspection" to receive "the procedural and substantive protections afforded in deportation proceedings." *Id.* Meanwhile, "aliens who presented themselves to immigration officials for inspection . . . were subject to more summary exclusion proceedings." *Id.* (internal quotation marks omitted). By enacting the expansive definition of "applicant for admission"—the definition to which Chacon Medina objects—Congress ensured the equal treatment of aliens, thereby "eliminat[ing] the previous incentives to enter the country illegally." *Id.*

Chacon Medina's preferred construction of the INA would therefore result in far more disparate treatment of similarly-situated aliens. Her frivolous equal-protection claim is untenable.

### D.    The APA precludes judicial review of Chacon Medina's claim.

Chacon Medina argues that "[h]abeas relief is warranted to remedy . . . unlawful agency conduct." Dkt. No. 1 ¶ 113. Section 704 of the APA states, in no uncertain terms, that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review." 5 U.S.C. § 704 (emphasis added). Because Chacon Medina requests habeas relief as the remedy for her APA claim, she unwittingly admits that there is, in fact, an adequate remedy outside of the APA. Moreover, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the invalidity of their confinement' these claims must be brought in habeas." *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *9 (N.D. Tex. Dec. 13,

– 10 –

2025) (O'Connor, C.J.) (quoting *J.G.G.*, 604 U.S. 670, 672 (2025)). The APA thus does not provide for judicial review of her claim.

### E.    Chacon Medina's *Accardi* claim is not cognizable in habeas.

Finally, Chacon Medina argues that the respondents failed to follow the "immigration-specific arrest and processing regulations" set out in 8 C.F.R. § 287.8(c). Dkt. No. 1 ¶ 139. "By arresting [her] without a warrant and without satisfying the regulatory requirements governing such arrests," she argues, the respondents "violated the *Accardi* doctrine." *Id.* ¶ 146. To remedy this violation, Chacon Medina demands "her immediate release" from custody. *Id.* ¶ 147.

The *Accardi* doctrine requires agencies to follow their own rules and procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). The regulatory requirements for the arrests of aliens are set forth in 8 C.F.R. § 287.8(c). "An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested . . . is an alien illegally in the United States." § 287.8(c)(2)(i). And "[a] warrant of arrest shall be obtained except when" the officer with authority to arrest "has reason to believe that the person is likely to escape before a warrant can be obtained." § 287.8(c)(2)(ii).

Merits aside, Chacon Medina's *Accardi* claim "is inapposite in a petition for habeas relief." *Huynh v. Noem*, No. 4:26-CV-017, 2026 WL 694481, *3 (N.D. Tex. Mar. 12, 2026) (O'Connor, C.J.). Writs of habeas corpus are "available to correct the denial of fundamental constitutional rights, but [they] may not be used to correct mere irregularities or errors of law." *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959). "The Fifth Circuit

has confirmed in other contexts that the failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available." *Nguyen v. Noem*, 797 F. Supp. 3d 651, 664 (N.D. Tex. 2025) (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003)).  In other words, habeas exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre*, 525 F.2d at 935–36.  It is "not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the [alien] can lawfully be detained." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923).

Chacon Medina does not explain why her detention—which is mandatory under 8 U.S.C. § 1225(b)(2)(A)—is rendered unlawful by virtue of the alleged regulatory noncompliance.  She states, without a supporting citation, that "[c]ontinued detention based on an arrest that contravenes binding regulations is itself unlawful."  Dkt. No. 1 ¶ 144.  And she asserts that habeas is an "appropriate vehicle to remedy detention that results from an agency's failure to follow its own regulations," citing *Accardi*, 347 U.S. at 267–68 and *INS v. St. Cyr.*, 533 U.S. 289, 301–05 (2001).  *Id.* ¶ 145.  But *St. Cyr* and *Accardi* merely recognized the availability of habeas to "answer[] questions of law that arose in the context of discretionary relief."  533 U.S. at 307 (citing *Accardi*, 347 U.S. 260).  They did not turn the Great Writ into a free-wheeling vehicle for challenging all manner of regulatory violations.

Therefore, the Court concludes that Chacon Medina's *Accardi* claim is not cognizable in habeas.  *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that when a Chacon Medina's claim will not necessarily spell speedier release, it does not lie within the core of habeas).  Because Chacon Medina is subject to mandatory detention as a matter of binding

Fifth Circuit precedent, *see Buenrostro-Mendez*, 166 F.4th at 498, nothing about the purported regulatory violation calls into question the validity of her confinement.

**4.    Conclusion**

In short, Chacon Medina, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. The Fifth Amendment does not require her release in these circumstances, nor does the APA, the Suspension Clause or the *Accardi* doctrine. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on April 29, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE